Cite as 2024 Ark. App. 469

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-24-111

| | |
|---|---|
| CHRISTINE RODRIGUEZ<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered October 2, 2024<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-23-196]<br><br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Christine Rodriguez appeals from the order of the Garland County Circuit Court placing custody of her two children, MC1 and MC2,[1] with their father and closing their dependency-neglect case. On appeal, she argues that the circuit court abused its discretion when it denied her motion for continuance; in addition, she contends that the court erred in granting custody to the children's father and closing the case without giving her proper notice that reunification services would be terminated. We affirm.

I. *Factual and Procedural Background*

The Arkansas Department of Human Services (DHS) received a phone call from local law enforcement on April 27, 2023, after MC1 flagged down a passing motorist to request

---

[1]MC1 is a female born in 2008, and MC2 is a male born in 2011.

help because there was no food in the home. Upon conducting a child-welfare check at the home of a family friend where MC1 had been staying, DHS determined that Rodriguez's whereabouts were unknown. DHS also learned that fifteen-year-old MC1 had not attended school since January. Accordingly, DHS exercised a seventy-two-hour hold on MC1 and subsequently filed a petition for dependency-neglect alleging that she was at substantial risk of serious harm as a result of abandonment, abuse, neglect, and parental unfitness. Although DHS noted that it had not been able to locate MC2 at the time it filed the petition, it asked that he also be placed in DHS's custody.

The circuit court entered an ex parte order for emergency custody on May 1, placing MC1 in DHS's custody. The court also directed DHS to locate MC2, assess his home for safety, and, if necessary, take him into custody as well. Following a probable-cause hearing, which Rodriguez did not attend, the court continued custody of MC1 with DHS and ordered MC2 into DHS custody. The adjudication hearing was scheduled for June 21.

On June 21, Rodriguez appeared for the hearing, as did the children's father, Dennis Lorenzo, who lives in Arizona. At the parents' request, the court appointed counsel for both of them. In addition, the court placed custody of MC2 with Lorenzo and ordered that MC1 should have weekly phone calls with him until the next hearing. The court then continued the remainder of the adjudication hearing until July 19.

Following the July 19 hearing, the court entered an agreed adjudication order. In this order, the parents stipulated that the children were dependent-neglected due to environmental neglect resulting from Rodriguez's failure to provide adequate supervision.

The court also determined that Lorenzo was a nonoffending parent. With no objection noted by Rodriguez, the court placed the children in Lorenzo's temporary custody and set the goal of the case as reunification with a fit and proper parent and a concurrent goal of placement with relatives or fictive kin. Finally, the court scheduled a review hearing for October 25.

On October 23, however, the court entered an order continuing the review hearing until November 15. At the outset of the November hearing, Rodriguez's counsel informed the court that she was not present. Counsel stated that Rodriguez had told him she did not receive notice of the hearing and that he realized after going through his communication with her that he had failed to tell her about it. Counsel therefore asked for a one-week continuance "so [Rodriguez] could have notice of the hearing." DHS objected to the continuance, noting that Lorenzo was ready to proceed with the hearing that day. The court denied the request and proceeded with the review hearing.

During the hearing, Jamie Moran, the case supervisor, testified that the initial removal of MC1 occurred because she had called for help because she had nothing to eat and was unable to attend school. MC1 had been staying with Rodriguez's elderly friend; the friend was unable to care for MC1, and Rodriguez could not be located. Since that time, both children had been placed with their father, whom Moran described as the nonoffending parent. She added that DHS had asked Arizona Child Protective Services to conduct an assessment of his home, and that agency determined that he was fit and appropriate. She further stated that the children had been placed with him, and they were happy and doing

3

well. Because DHS had had no contact from Rodriguez, it was Moran's recommendation that the case be closed and custody of the children placed with their father.

Rodriguez's attorney called no witnesses and presented no evidence, but he did voice Rodriguez's objection to closure of the case and asked "for the full time that this case be worked on." The court nevertheless granted the motion to close and awarded permanent custody of the children to Lorenzo. An order to that effect was entered on November 21.

On November 22, Rodriguez moved to set aside the order placing the children with their father and closing the case. Rodriguez argued that the closure of the case amounted to a termination of reunification services to her without statutory notice and violated her due-process rights. In her accompanying brief, she acknowledged that the court was statutorily authorized to transfer temporary or permanent custody to the noncustodial parent on a finding that it is in the best interest of the children to do so. She argued, however, that Arkansas Code Annotated section 9-27-327(a)(1)(B)(iv)(b) (Supp. 2023) provides that "an order of a transfer of custody to the non-custodial parent does not relieve the Department of Human Services of the responsibility to provide services to the parent from whom custody was removed, unless the court enters an order to relieve the department of the responsibility." She urged that because DHS asked the court to close the case after it had placed the children with their father, it was, in effect, "asking to be relieved of providing reunification . . . services" without timely filing a motion for no-reunification services. The failure to "provide the required notice" violated her due-process rights, Rodriguez argued.

4

She therefore asked the court to set aside its order to close the case and order DHS to continue to provide reunification services to her.

DHS responded by noting that Rodriguez acknowledged that a court has the authority to transfer custody to a noncustodial parent pursuant to section 9-27-327(a)(1)(B)(iv)*(a)*. It pointed out, however, that nothing in that statute requires a party to file any type of motion prior to a court's decision to transfer custody. It added that even if some type of notice were required, Rodriguez had been told in October 2023 that DHS would be seeking permanent custody with Lorenzo.[2] Accordingly, DHS asked the court to deny Rodriguez's motion to set aside.

The circuit court entered an order denying Rodriguez's motion on December 11, and Rodriguez timely appealed. She now argues to this court that the circuit court erred in denying her request for a continuance of the review hearing; in addition, she asserts that the court erred in granting permanent custody of the children to Lorenzo and closing the case.

II. *Standard of Review*

In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the circuit court's findings unless they are clearly erroneous. *Samuels v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 2, 479 S.W.3d 596. A finding is clearly erroneous when,

---

[2]DHS attached as an exhibit a copy of an email from Jamie Moran to Rodriguez's attorney and others on October 23, 2023, stating that "[w]e recommend permanent custody with the father and close the case. We have still not heard from the mother at all." That email also contained a copy of the court report, which likewise reflected that "mother is currently unable to locate" and that placement with Lorenzo in Arizona was "the most permanent, fit placement for MC1 and MC2."

although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Link v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 569, 680 S.W.3d 724.

### III. *Discussion*

### A. Denial of Rodriguez's Request for Continuance

In her first point on appeal, Rodriguez argues that the circuit court erred when it denied her request for a continuance at the beginning of the review hearing. A motion for continuance shall be granted only upon a showing of good cause. *Williams v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 194, 575 S.W.3d 415. We will not reverse the denial of a motion for continuance absent an abuse of discretion amounting to a denial of justice. *Id.* A circuit court abuses its discretion when it acts improvidently and without due consideration. *Id.* The appellant bears the burden of proof and must show that he or she was prejudiced by the denial. *Collier v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 100, 641 S.W.3d 67.

At the beginning of the November 15, 2023 review hearing, the following colloquy occurred between the court and Rodriguez's counsel:

COURT:      [Counsel], you represent?

COUNSEL:    Christina Rodriguez, Your Honor.

COURT:      Is she present?

COUNSEL:    She is not, Your Honor.

COURT:      And have you had--when was the last contact you had with her?

COUNSEL: Actually, as we speak, Your Honor. Apparently, according to her, she did not receive notice of this hearing. I went through my communication with her and it does appear I failed to do that, Your Honor, and so I apologize to the Court for that. I would ask for a one-week continuance so she could have notice of the hearing.

[The court then heard objections to the continuance request from the attorney ad litem, counsel for DHS, and counsel for Lorenzo.]

COURT: [Counsel], was your client here at the last hearing when I set this hearing today?

COUNSEL: Your Honor, I don't believe she was at that hearing, but this hearing was originally set for October 25 and had been continued from that date, Your Honor. That was the hearing she had notice of.

COURT: I'm going to deny that motion and we'll go forward.

On appeal, Rodriguez argues that the circuit court abused its discretion in denying her request for a one-week continuance. She asserts the court's decision was arbitrary because it had previously continued the case from October 25 to November 15. She further claims that she was prejudiced by the court's decision because she was deprived of the opportunity to be present and defend against DHS's request to grant permanent custody to Lorenzo and close the case. Citing *Campbell v. Arkansas Department of Human Services*, 2016 Ark. App. 146, at 4, she complains that the circuit court ignored the necessity of "balancing the interests of all parties" when a continuance is sought in a termination case.

Rodriguez's reliance on *Campbell* is misplaced. In *Schultz v. Arkansas Department of Human Services*, 2021 Ark. App. 93, this court clarified that the "balancing of interests referenced in *Campbell*" is applicable only when "parents have pending criminal charges that are related to the termination proceedings, and where the courts are tasked with balancing

7

the protection of the parents' constitutional right against self-incrimination and effective representation with the protection of their parental rights." 2021 Ark. App. 93, at 7. Here, as in *Schultz*, Rodriguez did not have pending criminal charges related to the dependency proceedings; accordingly, *Campbell*'s balancing test is inapplicable.

Rodriguez's argument also fails for other reasons. First, she failed to make the requisite showing of good cause, and second, she failed to demonstrate how she was prejudiced by the denial of the continuance. As to the issue of good cause, it is undisputed that Rodriguez had notice of a review hearing that was set to take place October 25 and was represented by counsel. It is also undisputed that it was not until the morning of November 15––some twenty-one days later––that Rodriguez told her attorney that she was unaware of the hearing that day and that she wanted more time to work on her case. Although Rodriguez argues on appeal that good cause existed for a continuance because counsel failed to notify her of the new November hearing date, counsel failed to explain why he was making the continuance motion on the morning of the hearing. In other words, whether Rodriguez appeared on the originally set hearing date of October 25 and learned then that the hearing did not take place that day or whether she failed to appear on the October date, no explanation was offered as to why she waited twenty-one days to check in with counsel and learn of the new date. Moreover, according to the colloquy set forth above, Rodriguez appears to have been on the telephone with her counsel as counsel was requesting the continuance. Despite the denial of the request to continue the in-person hearing, no immediate request was then made that Rodriguez be permitted to appear via telephone,

8

Zoom, or some other remote method. When deciding whether a continuance should be granted, the circuit court should consider several factors, including the diligence of the movant. *Smith v. Ark. Dep't of Hum. Servs.*, 93 Ark. App. 395, 219 S.W.3d 705 (2005). The lack of diligence alone is sufficient to deny a continuance. *Hill v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 760. For these reasons, Rodriguez has failed to demonstrate that good cause existed for a continuance.

As to the question of prejudice, Rodriguez has also failed to demonstrate she was prejudiced by court's denial of her motion for continuance. It is axiomatic that this court will not reverse the denial of a motion for continuance absent an abuse of discretion amounting to a denial of justice, *Burkett v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 570, 507 S.W.3d 530, and the denial of a motion for continuance will not be reversed absent a showing of prejudice. *Britt v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 95, 640 S.W.3d 721. In *Isbell v. Arkansas Department of Human Services*, 2019 Ark. App. 110, 573 S.W.3d 19, the appellant sought a continuance because she was unable to attend her termination hearing. The circuit court denied it, and this court affirmed, holding that there had been no evidence that demonstrated the likelihood of her attendance in the future, she was represented by counsel throughout the proceedings, and she did not show how her presence at the hearing would have changed the outcome. *Id.* at 13, 573 S.W.3d at 27 (citing *Sanderson v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 481).

The same is true here. On appeal Rodriguez makes the conclusory statement that she was prejudiced because her attorney "was unable to present any defense without his client's

presence." She fails, however, to suggest what that defense might have been or that the outcome would have changed if she had been allowed to present it. Rodriguez was appointed counsel June 23, 2023. Her counsel continued representing her through the July 19 stipulation in which Rodriguez agreed that temporary custody of the children be placed with Lorenzo, their father. This was the same counsel who was present on the date of the November review hearing. Thus, her attorney was familiar with the case and, in fact, engaged in cross-examination of witnesses on Rodriguez' behalf. At the end of DHS's case, counsel stated he had no witnesses and that "my client did indicate she would object to this and would ask for the full time that this case be worked on." Furthermore, counsel failed to list any services his client was requesting, nor did he inform the court what evidence would have been supplied had Rodriguez appeared. Even in her brief, Rodriguez fails to identify any services that she would have requested that would have assisted her in the return of the children to her custody. Rather, DHS presented proof that it had been unable to locate Rodriguez and that she had been absent throughout most of the dependency-neglect case. In the absence of a demonstration of prejudice by Rodriguez, we are left with no choice but to affirm. *See Britt*, *supra* (affirming when mother did not proffer the testimony she would have presented if granted a continuance and made no arguments that the circuit court's findings would have been any different if the case had been continued).

### B. Reunification Services

In her second point on appeal, Rodriguez argues that the circuit court erred in granting permanent custody to Lorenzo and closing the case when she was not given "proper

notice required by statute" that reunification services would be terminated.[3] Rodriguez's

argument is premised on the adjudication statute found at Arkansas Code Annotated section

9-27-327(a)(1)(A)(iv). This statute provides that at an adjudication hearing,

> (a) The court may transfer temporary custody or permanent custody to the noncustodial parent after a review of evidence and a finding that it is in the best interest of the juvenile to transfer custody, or the court may order family time with the noncustodial parent.

> (b) An order of transfer of custody to the noncustodial parent does not relieve the Department of Human Services of the responsibility to provide services to the parent from whom custody was removed, unless the court enters an order to relieve the department of the responsibility.

Rodriguez asserts that the circuit court was within its authority to transfer custody of

MC1 and MC2 to Lorenzo pursuant to subsubsection (a), but she argues that the court never

entered an order to relieve DHS of the responsibility to provide services under subsubsection

(b). More specifically, Rodriguez asserts that "[i]f DHS wished to grant permanent custody to

[Lorenzo] *under Arkansas Code Annotated section 9-27-327*, it was required to first obtain an

order terminating reunification services [under] Arkansas Code Annotated section 9-27-

365."[4] She argues that because DHS did not provide the twenty days' notice required for

---

[3]Notably, Rodriguez does not challenge the actual grant of permanent custody to Lorenzo.

[4]Section 9-27-365(c) provides the grounds for an order terminating reunification services as follows:

An order terminating reunification services on a party and ending the duty of the Department of Human Services to provide services to a party shall be based on a finding of clear and convincing evidence that:
(1) The termination of reunification services is in the child's best interest; and

11

terminating reunification services under section 9-27-265, she was deprived of due process, and the "closure order must be reversed."

Contrary to Rodriguez's assertions, however, the adjudication statute is not applicable here. By the time the court placed the children with Lorenzo, the case had proceeded to the point of a six-month review hearing. *See* Ark. Code Ann. § 9-27-337 (Supp. 2023). We are therefore unconvinced that Rodriguez's argument, premised as it is on section 9-27-327, is well founded.

---

(2) One (1) or more of the following grounds exist:

(A) A circuit court has determined that the parent, guardian, custodian, or noncustodial parent has subjected the child to aggravated circumstances that include:

(i) A child's being abandoned;

(ii) A child's being chronically abused;

(iii) A child's being sexually exploited;

(iv) A child's being subjected to extreme or repeated cruelty or sexual abuse;

(v) A determination by a circuit judge that there is little likelihood that services to the family will result in successful reunification;

(vi) A child has been removed from the custody of the parent or guardian and placed in foster care or the custody of another person three (3) or more times in the past fifteen (15) months; or

(vii) A child's or a sibling's being neglected or abused such that the abuse or neglect could endanger the life of the child; or

(B) A circuit court has determined that the parent has:

(i) Committed murder of a child;

(ii) Committed manslaughter of a child;

(iii) Aided or abetted, attempted, conspired, or solicited to commit murder or manslaughter;

(iv) Committed a felony battery that results in serious bodily injury to any child;

(v) Had parental rights involuntarily terminated as to a sibling of the child; or

(vi) Abandoned an infant as defined in § 9-27-303(1).

Clearly, there were no allegations in this case that any of these circumstances existed.

The only caselaw that Rodriguez cites in support of her argument is *Meyers v. Arkansas Department of Human Services*, 2017 Ark. App. 614, 533 S.W.3d 654, in which this court reversed a grant of permanent custody because DHS failed to file a termination-of-reunification-services motion. *Meyers*, however, is distinguishable in three important respects. First, in *Meyers*, DHS sought to place custody of the children with their father *at the adjudication hearing itself*; as such, section 9-27-327 was directly implicated. Here, on the other hand, section 9-27-327 is not implicated because the case had proceeded to the point of a six-month review hearing. Second, the attorney ad litem in *Meyers* expressly asked for "no reunification services" because there were no services that could be provided that would help Meyers. This court held that because there was an express request to cease the services that had been ongoing for at least six months, DHS was required to have given Meyers the requisite statutory notice.[5] Here, on the other hand, there is no evidence that DHS had ever provided services to Rodriguez because she remained out of contact with DHS throughout the pendency of the case. Consequently, DHS never expressly sought cessation of services. Third and finally, in *Meyers*, the appellees conceded under the facts of that case that it was reversible error for the circuit court to close the case without reunification services because

---

[5]Meyers did not receive six months of services within the confines of the dependency-neglect proceeding. Rather, a protective-services case had been opened in October 2016, and DHS attempted to provide services to Meyers from then until January 2017. DHS filed the petition for emergency custody and dependency-neglect on February 13, 2017, and the adjudication hearing that was at issue in that case was held April 19, 2017. Thus, Meyers received services for approximately four months through the protective-services case and for approximately two months through the dependency-neglect case.

Meyers did not receive the required statutory notice and joined Meyers's request that this court reverse the circuit court's decision to not order reunification services and close the case. There are no such concessions here. Both DHS and the attorney ad litem on behalf of the children vehemently argue in support of affirming the circuit court's decisions.

Apart from the inapposite *Meyers* case, Rodriguez cites no authority for the principle that a motion for no reunification services under section 9-27-365 is a prerequisite for a court's granting a transfer of custody to a noncustodial parent and closing the case. Indeed, her argument ignores other statutes permitting a transfer of custody during dependency-neglect proceedings without reference to section 9-27-365. *See, e.g.*, Ark. Code Ann. § 9-27-334(a)(2)(A) (Supp. 2023) (permitting a court to transfer custody of a juvenile to a relative upon a finding of dependency-neglect); Ark. Code Ann. § 9-27-338(c)(1) (Repl. 2020) (permitting the same at a permanency planning hearing). Likewise, she disregards multiple cases affirming the grant of permanent custody to a relative and closing the case at all phases of dependency-neglect proceedings without so much as mentioning section 9-27-365. *See, e.g., Ark. Dep't of Hum. Servs. v. Jones*, 97 Ark. App. 267, 248 S.W.3d 507 (2007) (granting permanent custody to child's grandparents and closing the case at the probable-cause hearing); *Canada v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 564, 507 S.W.3d 523 (awarding permanent custody of children to relatives following permanency-planning order and closing the case); *Wheatley v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 538, 503 S.W.3d 86 (awarding permanent custody of children to grandparents after fifteen-month review hearing and closing the case).

Furthermore, we agree with DHS's observation that when a court grants permanent custody to a noncustodial parent, the case *must* be closed because at that point, permanency has been achieved, and the child is no longer dependent-neglected. *See* Ark. Code Ann. § 9-27-303(43) (Supp. 2023) ("'Permanent custody' means custody that is transferred to a person as a permanency disposition in a juvenile case *and the case is closed*.") (emphasis added); *Young v. Ark. Dep't of Hum. Servs.*, 2012 Ark. 334, at 1 (holding that "[a] dependency-neglect case is closed when the child is no longer dependent-neglected under the Juvenile Code" and noting that once the circuit court places a child in the permanent custody of another, that child is no longer dependent-neglected). Neither the "permanent custody" statute nor the relevant caselaw requires DHS to expressly move to stop reunification services when permanent custody is placed with the noncustodial parent and the case is closed.

In order to accept Rodriguez's argument, we would have to read into every statute that authorizes placement of a juvenile in a relative's custody a requirement that the court must conduct a no-reunification analysis under section 9-27-365. Nowhere in our statutes or caselaw does such a prerequisite exist, and we will not add words to a statute to convey a meaning that is not there. *See Mahone v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 370, 383 S.W.3d 854. We therefore decline to accept her invitation to do so and affirm the circuit court's denial of her motion to continue as well as the court's decision to grant permanent custody to Lorenzo and close the case.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Marc D. Tave*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.