Cite as 2025 Ark. App. 72

# ARKANSAS COURT OF APPEALS
### DIVISION III
#### No. CV-24-664

| | |
|---|---|
| MIRANDA CAMPBELL<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered February 12, 2025<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23JV-23-128]<br><br>HONORABLE DAVID M. CLARK, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Miranda Campbell appeals the Faulkner County Circuit Court's termination of her parental rights to her three children, Minor Child 1 (MC1), Minor Child 2 (MC2), and Minor Child 3 (MC3).[1] On appeal, Campbell argues that the circuit court erred in denying her motion for continuance. Specifically, Campbell argues that the court's denial of a continuance amounted to a violation of her due-process rights. We affirm.

On April 6, 2023, the Arkansas Department of Human Services (DHS) exercised emergency custody of the three juveniles due to homelessness and neglect. Specifically, police

---

[1]Campbell had a fourth child, hereinafter referred to as MC4, but Campbell's rights to that child were not terminated. The children's biological father is Caleb Johnson; his parental rights to MC1, MC2, and MC3 were also terminated, but he is not a party to this appeal.

were called to a Walmart parking lot where the children were barefoot with no coats, and MC2's lips were blue. The parents indicated they were homeless, had been for about two years, and had used up all available resources. Law enforcement found that they had been banned from all the area hotels "due to the family trashing and destroying rooms." MC4 was living with his grandparents and had been since his birth.

On April 10, DHS filed a petition for ex parte emergency custody and dependency-neglect of the juveniles, and on the same day, the circuit court entered an ex parte order for emergency custody. The next day, the circuit court held a probable-cause hearing wherein it found that probable cause existed for the emergency order to remain in place.

On May 9, the circuit court held an adjudication hearing and accepted the parties' stipulation to a dependency-neglect finding based on the parents' homelessness and unemployment that made them unable to care for the basic needs of their children. The court also ordered that the case goal be reunification with a concurrent goal of adoption. Additionally, it ordered Campbell to cooperate with DHS; to notify DHS of changes in residence; to take medication as prescribed; to refrain from the use of illegal drugs and alcohol; to complete parenting classes; to obtain and maintain stable housing and employment; to maintain a clean, safe home for herself and the juveniles; and demonstrate an ability to protect the juveniles and keep the juveniles safe. Further, the circuit court advised the parents that the clock is ticking, and there is a limited amount of time to obey court orders and correct the conditions that caused the juveniles' removal in order for the juveniles to be safely returned.

On August 3, the circuit court held a review hearing. At this hearing, the circuit court ordered that the case plan goal remain reunification with a concurrent goal of adoption, that MC4 continue in the custody of his grandparents, and that the remaining juveniles continue in the custody of DHS. The court also found that Campbell had failed to comply with the case plan, noting that Campbell had not had any meaningful contact with DHS; had not attended any visits; and had not made any progress toward alleviating or mitigating the causes of removal. Additionally, the court found that DHS had made reasonable efforts.

On November 1, the circuit court held another review hearing. At this hearing, the circuit court ordered that the case-plan goal remain reunification with a concurrent goal of adoption, that MC4 continue in the custody of his grandparents, and that the remaining juveniles remain in the custody of DHS. The court also found Campbell had partially complied with the case plan, noting that housing remained an issue throughout the case; that she attended four visits in the review period; that she had tested positive for THC; and that she had made minimal progress toward alleviating or mitigating the cause of removal. The court also found that DHS had made reasonable efforts.

On January 18, 2024, the circuit court held a third review hearing. At this hearing, the circuit court ordered that the case-plan goal remain reunification with a concurrent goal of adoption, that MC4 remain in the custody of his grandparents, and that the remaining juveniles remain in the custody of DHS. The court also found that Campbell had partially complied with the case plan, noting that she was residing in Little Rock with family but that DHS had not been able to visit inside the home; that she remained unemployed; that she

3

had been referred for and started counseling but had missed two sessions; that she had a positive drug screen for methamphetamine and amphetamine; that she had been referred for drug-and-alcohol assessment; that she had missed a substantial amount of visitation; and that she had made minimal progress toward alleviating or mitigating the causes of removal. The court found that DHS had made reasonable efforts.

On April 2, the circuit court held a permanency-planning hearing. At this hearing, the circuit court changed the primary goal of the case to adoption and ordered that MC4 remain in the custody of his grandparents and that the other juveniles remain in DHS's custody. The circuit court also found that Campbell had failed to comply with the case plan and court orders, specifically finding that she was residing with her sister; she was unemployed and relies on others for financial support; she still needed to get into a substance-abuse program; she had attended only one visit in 2024 but arrived an hour late, which resulted in her not seeing the juveniles; she attended six visits during the case; she was discharged from counseling but had not completed a drug-and-alcohol assessment; she admitted to drug use as recently as February; and she had made minimal progress toward alleviating or mitigating the causes for removal. Again, the court found that DHS had made reasonable efforts.

On April 19, DHS filed a petition to terminate Campbell's parental rights to MC1, MC2, and MC3.[2] On May 21, 2024, the circuit court terminated Campbell's and Johnson's parental rights to MC1, MC2, and MC3. Campbell's timely appeal is now before this court.

The burden of proof in termination-of-parental rights cases is clear and convincing evidence, which requires a "degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established." *E.g., Ring v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 146, at 5, 620 S.W.3d 551, 555. To terminate parental rights, a circuit court must find by clear and convincing evidence at least one termination ground and that termination is in the juvenile's best interest. *Id.* at 6, 620 S.W.3d at 555. The circuit court determines whether termination is in the juvenile's best interest by considering two factors: (1) the likelihood that the juvenile will be adopted if parental rights are terminated and (2) the potential harm caused by continuing contact with the parent. *Id.*, 620 S.W.3d at 555.

The termination statute does not require clear and convincing evidence of each of these factors; rather, it is the best-interest finding, itself, that must be supported by clear and convincing evidence. *E.g., Holdcraft v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 151, at 10, 573 S.W.3d 555, 561. On appeal, appellate courts review termination-of-parental-rights cases de novo. *Ring*, 2021 Ark. App. 146, at 5, 620 S.W.3d at 555. Additionally, appellate courts will not reverse a circuit court's termination order unless the findings are clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence

---

[2]The petition was also filed against the biological father, Caleb Johnson, and did not include MC4.

is left with a definite and firm conviction that a mistake has been made." *Id.* at 5–6, 620 S.W.3d at 555. Further, appellate courts give great weight to the circuit court's ability to observe and assess witnesses. *Id.* at 6, 620 S.W.3d at 555.

On appeal, Campbell argues that the circuit court abused its discretion in denying her motion for continuance. Campbell's appeal fails to challenge any of the circuit court's findings related to termination grounds or best interest; therefore, she has waived those findings on appeal. *State v. Grisby*, 370 Ark. 66, 69, 257 S.W.3d 104, 107 (2007) (holding that arguments made below but not on appeal are considered abandoned); *Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 409, 242 S.W.3d 305, 316–17 (2006).

Rather, Campbell argues that the circuit court abused its discretion in denying her counsel's motion for continuance, and by doing so, it was a violation of her due-process rights. Campbell failed to appear for the termination hearing, and she argues that the circuit court's decision to move forward with the termination hearing despite her absence prevented her from being able to put on a defense. If a circuit court denies a continuance request, the appellant must show both that the circuit court abused its discretion and that she was prejudiced by the denial. *E.g.*, *Shultz v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 93, at 7.

To prove an abuse of discretion, the appellant must show that the circuit court acted improvidently and without due consideration. *Id.* For a court to grant a continuance, the moving party must show good cause. *Id.* at 6. Notably, "[l]ack of diligence by the moving party is sufficient reason to deny a motion for continuance." *Id.* One common example of a lack of diligence is when the appellant requests a continuance at the beginning of a

6

termination hearing. *Wright v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 503, at 9, 560 S.W.3d 827, 832; *Brown v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 455, at 3; *Martin v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 407, at 4, 465 S.W.3d 881, 883. Additionally, to determine whether an appellant was prejudiced from the denial, appellate courts may consider the appellant's history of compliance during the case. *See Wright*, 2018 Ark. App. 503, at 9, 560 S.W.3d at 832 ("[A]ppellant fails to show prejudice because her past behavior demonstrated a history of noncompliance such that even if the court granted the continuance, she was not likely to follow all the steps necessary for reunification.").

Given the record before us, we hold that Campbell was not diligent in requesting a continuance. She never communicated with her attorney to request a continuance at all; she simply requested a Zoom link the day of the hearing. While Campbell told DHS that she was stuck in Missouri due to a broken-down Penske truck, her maternal grandfather testified that Campbell was in Missouri working. The court found that Campbell had failed to take adequate steps to ensure her presence for the hearing and waited until the eleventh hour to attempt to make arrangements to attend. Moreover, the circuit court did not act improvidently because it considered Campbell's arguments and determined that her testimony was unlikely to affect the court's decision on termination. *See, e.g., Sanderson v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 481, at 4.

Further, Campbell was never found to be more than partially compliant with the case plan and court orders and attended only six visits with her children during the entire year-long case, so she is unable to demonstrate that she was prejudiced. *St. John v. Ark. Dep't of*

7

*Hum. Servs.*, 2024 Ark. App. 450, at 4–5, 700 S.W.3d 197, 203) (holding the denial of a motion for continuance did not prejudice the appellant where she had only one contact with the child and had near complete noncompliance in the case). On appeal, Campbell fails to identify actual prejudice; there was no proffer of testimony, just a vague argument that counsel was unable to call her as a witness. *Britt v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 95, at 9, 640 S.W.3d 721, 727 ("A circuit court does not abuse its discretion in denying a motion for continuance on the basis of the absence of witnesses where no proffer was made of what the witnesses would testify to."). Moreover, we note, Campbell cannot establish prejudice because she failed to challenge the statutory grounds or the determination that termination was in the best interest of the juveniles. *Id*. at 9, 640 S.W.3d at 727. The circuit court did not abuse its discretion in denying Campbell's request for a continuance.

Nevertheless, Campbell argues that depriving a parent of a child without the proper due process is an improvident act and an abuse of discretion. However, we decline to address Campbell's argument because no due-process argument was preserved for review. *E.g.*, *Chacon v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App 277, at 8, 600 S.W.3d 131, 135 ("It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below."); *Harris v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 559, at 9, 16 538 S.W.3d 842, 849 ("[N]o specific due-process argument was raised below, and therefore this point is not preserved for review.").

For all the foregoing reasons, we affirm.

Affirmed.

GLADWIN and THYER, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.