Cite as 2025 Ark. App. 500

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-245

| | |
|---|---|
| MADALENE BENAVIDES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered October 22, 2025<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43JV-21-93]<br><br>HONORABLE BARBARA ELMORE, JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Madalene Benavides appeals after the Lonoke County Circuit Court filed an order terminating her parental rights to her minor child (MC) (DOB 08-02-19).[1] Appellant does not challenge the sufficiency of the evidence to support termination. Instead, her sole argument on appeal is that the circuit court abused its discretion in denying her request for a continuance. We affirm.

I. *Relevant Facts*

On July 22, 2021, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect. In the affidavit attached to the petition, a family-service worker averred that DHS had been involved with the family due to

---

[1]The circuit court additionally terminated the parental rights of Nelson Rivera, MC's father; however, he is not a party to this appeal.

environmental issues with the home. With assistance from law enforcement, DHS removed MC from the home on July 20, 2021, due to environmental neglect and concerns with appellant's mental state. The circuit court granted the petition for ex parte emergency custody, finding that probable cause existed for the removal. A probable-cause order was filed on July 28, 2021.

After an adjudication hearing, an adjudication order was filed on September 22, 2021. The circuit court found MC to be dependent-neglected on the basis of environmental neglect. The court ordered that the case goal be reunification with a concurrent plan of permanent custody with a family member. Appellant was specifically ordered to not use or possess controlled substances; submit to random drug screens; obtain a drug-and-alcohol assessment and follow any recommendations; complete a drug-treatment program and follow all discharge recommendations if recommended; participate in homemaker services; complete parenting classes; attend individual counseling; maintain stable housing and income; undergo a forensic psychological evaluation; comply with the case plan; cooperate with and maintain contact with DHS; attend visitations; and demonstrate improved parenting.

The case progressed, and review hearings were held on November 22, 2021; January 4, 2022; March 9, 2022; and April 1, 2022. In the review orders filed after these hearings, the circuit court found that MC should remain in DHS custody, and the concurrent goals continued. Appellant was not present at the first two of those hearings.

A permanency-planning hearing was held on September 26, 2022. In the permanency-planning order, the circuit court found that appellant was complying with the case plan and making significant, measurable progress. The circuit court stated that "the goal of the case shall be authorizing a plan to place custody of the juvenile with a parent, guardian, or custodian."

A fifteen-month-review hearing was held on December 7, 2022. In the resulting amended order, the circuit court continued the goal of reunification with a concurrent plan of permanent custody with a relative. The circuit court ordered appellant to begin receiving unsupervised weekend visitation and authorized a trial placement if the unsupervised visitation went well. In the review order filed on February 22, 2023, the circuit court found that MC was currently in a trial home placement and that the trial home placement should continue. In the review order filed on July 28, 2023, the circuit court found that it was in MC's best interest to be placed in appellant's custody. However, the circuit court ordered "a court monitored protective services case for the next six months." It further retained its jurisdiction and scheduled a subsequent review hearing for October 26, 2023. In the review order filed after that review hearing, the circuit court found that there were no health or safety concerns that necessitate MC's removal and that the court-monitored protective-services case should continue to stay open. A review hearing was scheduled for January 4, 2024.

On January 4, 2024, DHS filed a motion for ex parte emergency change of custody. The affidavit attached to the motion explained that appellant was driving while intoxicated

and "wrecked the vehicle" with MC inside. The circuit court granted the motion the same day. A second probable-cause order was filed on February 6, 2024.

An adjudication hearing was held on April 29, 2024. The circuit court found MC to be dependent-neglected on the basis of "parental unfitness due to parental substance abuse." The court ordered that the case goal be reunification with a concurrent goal of adoption. Appellant was specifically ordered to remain drug-free; participate in homemaker services, complete twelve hours of parenting classes; complete a minimum of twenty-four individual counseling sessions; submit to random drug-and-alcohol screens at least two times a month; submit to hair-follicle and nail-bed drug screens; obtain a new drug-and-alcohol assessment and follow any recommendations; maintain stable housing and income; undergo a forensic psychological evaluation and follow the recommendations; comply with the case plan; cooperate with and maintain contact with DHS; attend visitations; demonstrate improved parenting; and attend AA/NA meetings three times a week and provide sign-in sheets to the court.

A review hearing was held on July 3, 2024. In the resulting order, the circuit court continued the goals of the case and ordered appellant to attend NA/AA meetings two times a week in addition to attending outpatient drug treatment. The circuit court further ordered that appellant submit to a hair-follicle and nail-bed test and complete her psychological evaluation.

4

Another permanency-planning hearing was held on October 2, 2024. After that hearing, the circuit court changed the goal of the case to adoption following termination of parental rights. Regarding appellant's compliance, the circuit court found the following:

> The Court finds the parent, Madalene Benavides, has not made significant measurable progress in this case and despite participating in case plan services and completing most of the services she has not benefitted nor learned from the services. She is unable to remedy the conditions that caused removal and unable to provide a safe and appropriate home for her child. Currently, she has not made significant measurable progress toward achieving the goals established in the case plan and has not been diligently working toward reunification or placement in the home of the parent, guardian, or custodian. Placement of the juvenile in the home of the parent, guardian, or custodian cannot occur within a time frame consistent with the juvenile's developmental needs.

Thereafter, DHS and the attorney ad litem filed a joint petition for the termination of parental rights on November 8, 2024. Concerning appellant, the petition alleged the failure-to-remedy, other-subsequent-factors, and aggravated-circumstances grounds for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2023), and a termination hearing was set for January 9, 2025. The parties agreed to a continuance due to inclement weather, and a termination hearing was held on January 16, 2025.

At the beginning of the hearing, appellant's counsel moved for a continuance because appellant was not present. Counsel represented that appellant thought DHS would provide her transportation; however, counsel explained that appellant "acknowledge[d] that she didn't call and ask for that." The circuit court denied the motion and noted that it knew "that [appellant has] asked for transportation in the past and had no trouble getting here. . . . And [appellant] knew [she] had to ask for transportation, so I can't think really that if I

5

continued it, that [appellant] would be here next time." Counsel stated that he understood the court's ruling but noted that it would be "very difficult" for him to represent appellant without her being there.

Kamesha Youngblood, a DHS supervisor and caseworker assigned to the case, testified about the case history as already outlined. She noted that appellant's January 9, 2025, drug screen was positive for "amphetamines, benzos, and THC." Appellant had challenged that drug screen, but the laboratory verified that the sample was positive for amphetamines, "7-aminoclonazepam," and THC. Appellant's January 13, 2025, drug screen was also positive for "amphetamines and benzos." Ms. Youngblood was concerned about MC returning to appellant's care because appellant was still having mental-health issues and testing positive for THC. Accordingly, she recommended that appellant's parental rights be terminated. She could not think of anything further that could be done "to bring [appellant] into compliance." She opined that MC is adoptable and had no barriers to adoption.

Casper Webb, a former DHS caseworker assigned to the case from June to October 2024, testified he had supervised some of the visitations appellant had with MC. He said that during the visitation, appellant "would get less interested in what [MC] was doing" and would tell him to go play by himself. Appellant would then either play on her phone or talk with him about unrelated issues. Mr. Webb also expressed concerns about appellant's mental health. Appellant would become "frantic at times" because she would see things that were not there. On one occasion, appellant pulled MC's hair and then put her hands around MC's neck. Mr. Webb also stated that appellant would "mumble" or talk "gibberish" while

6

looking out the window when he transported appellant to visitations. Mr. Webb opined that termination of parental rights was in MC's best interest.

Karletha Shelton-Bolds, a DHS program assistant, testified that she observed some of appellant's visitations with MC and aided with transportation. Her testimony echoed that of Mr. Webb. She explained that appellant would have MC go play without her while she would sit and play on her phone. Ms. Shelton-Bolds stated that she tried to tell appellant that she needed to play with MC, but she refused. Appellant would ignore her or "laugh out" when Ms. Shelton-Bolds tried to give parenting tips.

Shirley Allen, a DHS adoption specialist, testified that there were 285 families that matched as potential adoptive resources and that the current foster parents were also interested in adopting MC. She testified that MC is "highly adoptable." Heather Smith, MC's foster parent, confirmed that she was interested in adopting MC.

At the conclusion of the hearing, the circuit court orally ruled from the bench that it was granting the petition for termination of parental rights. The circuit court filed a written order terminating appellant's parental rights on February 5, 2025. The circuit court specifically found by clear and convincing evidence that all three grounds alleged in the petition against appellant supported termination and that it is in MC's best interest to terminate appellant's parental rights. Relevant to our disposition of appellant's point on appeal, the circuit court made the following specific findings:

> Ms. Benavides and Mr. Rivera separately informed their respective attorneys shortly before the hearing that they needed transportation to the hearing. Both attorneys made motions requesting that the hearing be continued. The Court denied

7

those motions due to the parties not requesting transportation in a timely manner, but did postpone the hearing by thirty (30) minutes to give the parties an opportunity to try to get their own transportation to the hearing. Neither parent appeared.

. . . .

The Court finds that this case has been open for 4 years and neither parent has remedied the conditions that caused the removal of [MC]. . . . The Court finds that Ms. Benavides has manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent. . . . The Court finds aggravated circumstances and that there is little likelihood that continued services would result in successful reunification. This case has been going on for 4 years and Ms. Benavides has completed all the reunification services at least twice. She had multiple drug and alcohol assessments, psychological evaluations, received individual therapy, multiple rounds of parenting classes, one-on-one parenting, intensive family services, and homemaker services, but Ms. Benavides did not internalize any of the services. The Court finds that additional time and services will not result in successful reunification because Ms. Benavides cannot be forced to utilize the skills taught and Mr. Rivera did nothing in four years. Therefore, additional time would only be harmful to the child and delay permanency for him. The Court finds that the Department did everything they could do to reunite this family.

The Court finds that it is in the best interest of the child to terminate parental rights. It is in the best interest of the child for termination of parental rights to occur because the child needs stability and permanency. He is thriving in his foster home where he is receiving structure and stability. Ms. Benavides and Mr. Rivera have not and will not be able to provide him with permanency and stability within an appropriate timeframe for the child based on his developmental needs. The Court also finds that this child is highly adoptable based on the testimony of the Adoption Specialist that there are 285 adoptive matches. The child has no special needs, he is healthy, there are no behavior issues, and there are no barriers to adoption. The foster parent that he has been with for the past 4 years is interested in adopting him. Mrs. Heather Smith testified that even during the time that [MC] was with his mother that they were very involved with him, and they want his mother to be a part of his life in the future if it is safe. The Court orders a good-bye visit to be supervised by the Department for 2 hours if it is not distressing to MC. . . .

8.     The Court finds by clear and convincing evidence that it is in the best interest of the juvenile . . . to terminate parental rights. In making this finding, the court specifically considered (A) the likelihood that the juvenile will be adopted if the

termination petition is granted, specifically the testimony of Kameshia Youngblood, FSW Supervisor and Shirley Allen, Adoption Specialist as well as the adoption addendum showing there are 285 matches in addition to his current foster family's interest in adopting him; and (B) the potential harm on the health an safety of the juvenile caused by returning the juvenile to the custody of the parents, namely parental unfitness. The mother has not benefited from the services, her lifestyle remains unstable, she has recently relapsed, she becomes easily overwhelmed resulting in neglecting her child, and her poor mental health interferes with her ability to care for the child and puts her child in danger of being harmed. . . . As such, the Court grants the Joint Petition to Terminate Parental Rights and hereby terminates all parental rights between Madalene Benavides and Nelson Rivera with their child, [MC]. The case goal shall be adoption.

This appeal followed.

II. *Motion for a Continuance*

Appellant does not challenge any of the circuit court's findings related to termination grounds or best interest; therefore, she has waived any challenge to those findings on appeal. *Campbell v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 72, 705 S.W.3d 524. Instead, her sole argument on appeal is that the circuit court abused its discretion in denying her request for a continuance. She argues that the circuit court acted improvidently and without due consideration when it denied her request for a continuance after she was unable to attend the hearing because she lacked transportation. She further argues that the circuit court's decision was arbitrary in that it had already granted a continuance the previous week due to inclement weather yet denied her request. Appellant claims she suffered prejudice because she was denied the opportunity to be present and defend against the termination petition and the allegations made against her. We disagree.

9

A motion for continuance should be granted only upon a showing of good cause and only so long as is necessary. *Butler v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 570. We will not reverse a denial of a motion for continuance absent an abuse of discretion amounting to a denial of justice. *Lee v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 322. A circuit court abuses its discretion when it acts improvidently and without due consideration. *Rodriguez v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 469, 700 S.W.3d 455. Lack of diligence by the moving party is a sufficient reason to deny a motion for continuance. *Britt v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 95, 640 S.W.3d 721. When deciding whether a continuance should be granted, the circuit court should consider the following factors: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance in the event of postponement; (4) the filing of an affidavit stating not only what facts the witness would prove but also that the appellant believes them to be true. *Smith v. Ark. Dep't of Hum. Servs.*, 93 Ark. App. 395, 401, 219 S.W.3d 705, 708 (2005). Additionally, we will not reverse absent a showing of prejudice from the denial of the motion for continuance. *Id.*

In this case, the circuit court did not act improvidently or without due consideration when it denied the request for a continuance. It is undisputed that appellant had notice of the hearing and had previously sought DHS's assistance to provide transportation to allow her to attend prior hearings. However, appellant acknowledged that she had not asked DHS for assistance to attend the termination hearing. Instead, appellant waited until the beginning of the termination hearing to ask for a continuance because she did not have

transportation. We have held that a lack of diligence alone is sufficient to deny a continuance. *Rodriguez, supra*; *Blankenship v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 63, 661 S.W.3d 227. Therefore, appellant has failed to demonstrate that good cause existed for a continuance.

Moreover, appellant has failed to demonstrate that she was prejudiced by the court's denial of her motion for continuance. In denying appellant's motion, the circuit court specifically noted that appellant knew how to ask for transportation but failed to do so. Therefore, even if the circuit court granted the continuance, there was no evidence that demonstrated the likelihood of her attendance in the future. *See Rodriguez, supra*. Further, appellant makes the conclusory statement that she was prejudiced when the court denied her request for a continuance because "she was denied an opportunity to be present and defend against the termination petition and the allegations made against her." However, she fails to state what that defense might have been or that the outcome would have changed if she had been allowed to present it. By the time of the termination hearing, MC had been removed from appellant's custody twice, and even though appellant was offered services throughout the pendency of the case, she continued to use drugs and failed to resolve her mental-health issues that posed a danger to MC. In *Campbell, supra*, this court held that a mother could not establish prejudice because she failed to challenge the statutory grounds or the determination that termination was in the best interest of the juveniles. The same is true here. Thus, for all these reasons, we cannot say that the circuit court abused its discretion in denying appellant's request for a continuance, and we affirm.

11

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.